The next matter, number 171394, Jared Sasen v. Richard D. Spencer. Good morning. Your Honor, before I begin, may I please reserve two minutes for rebuttal? You may. Thank you. Good morning, and may it please the Court, the only blemish on petty officer Sasen's otherwise sparkling military record, which includes distinguished service on ships such as the USS Cole, the USS Truman, and the site of the events in question here, the USS Constitution, are the result of a non-judicial punishment for Captain's Mast administered and convened in January of 2014. We ask this Court to set aside the mast for two reasons. First, the Navy failed to follow its own regulations and procedures when it elicited statements from Petty Officer Sasen without providing warnings concerning his right to remain silent, then relied on those statements at mast. Second, the Navy's consideration of appellant statements was not harmless error because absent these statements, the Navy had no evidence to support either charge appellant faced. The Board for Correction of Naval Records' failure to vacate the mast was not in accordance with law under the Administrative Procedures Act and should be reversed. Turning to my first point, the Navy's own regulations and procedures make it clear that the Navy was required to provide certain warnings to Petty Officer Sasen before eliciting statements from him. In particular, the Navy failed to follow procedures reflected in three places, the Commander's Quick Reference Handbook for Legal Issues, the Manual of the Judge Advocate General or the JAG Manual, and the Personnel Command Instruction 5811.1. The Commander's Quick Reference Handbook for Legal Issues, the Manual of the Judge Advocate General, and the Personnel Command Instruction 5811.1. The Navy failed to follow procedures reflected in three places, the Navy failed to follow procedures reflected in three places, the   Navy failed to follow procedures reflected in three places, the Navy failed to follow procedures reflected in three places, the Navy failed to follow procedures reflected in three places. Yes Your Honor, these particular documents are the Navy's own interpretation and the Navy's own direction to its personnel for how to implement certain types of procedures, for example, a non-judicial punishment procedure or in the case of the JAG manual, it's much broader than that. And so these are the Navy's own direction to its own personnel on how to administer these particular types of proceedings and within the Commander's Quick Reference Handbook for Legal Issues, which is a lengthy document that spells out a number of these procedures, this document requires that prior, that a cleansing warning, if someone's previously questioned a member and did not provide that member a rights warning, provide that individual a cleansing warning, they need to, one, advise the member that the prior statement cannot be used against him or her. I've read the brief, I know what they say, all right? So you haven't really answered my question about what force they have, let me ask you a second question. Do any of these three references, I understand that all of them indicate that cleansing warnings ought to be given in connection with non-judicial punishment proceedings, such as this Board of Disciplinary Review that was, and the Captain's Mass that were conducted here, do any of them state that the remedy for a violation thereof is the exclusion of any ensuing evidence, ensuing evidence? Your Honor, none of the three references that we've provided provide an explicit exclusionary rule and that's why we're here. Okay, is there any statute or regulation of the Navy that provides for application of the exclusionary rule for ensuing statements made after a cleansing warning was omitted in non-judicial punishment proceedings? Not that we're aware of, Your Honor, but, but the, the, um... Mr. Bohenig, are you arguing that in fact this Court should adopt an exclusionary rule for non-judicial punishment? And if so, what is the basis of it? Is it, is it Article 31? Is it the Constitution? Good policy? What would be the basis for such a rule? Well, Your Honor, without, um, without an exclusionary rule that, that, that, without such an exclusionary rule, there'd be really no remedy for the violation of the regulations that the Navy has imposed and the, the limitations that the Navy has imposed on itself. Isn't, isn't the remedy that the violations should be considered in determining whether the statements were voluntary and whether overall the decision by the Board, which is the decision we're reviewing, whether it was correct in concluding that there was no injustice here? In other words, it seems to me that the circumstances under which his statements were taken, without the benefit of his warnings, which would be the best practice, according to the Navy, seems to be certainly relevant in deciding what weight to give to those statements. But by operation of what source of law would we conclude that just as a matter of law, they can't be considered at all? Sure, Your Honor. Well, well, number one, there's no case that we were able to identify, in which applying the voluntariness standard to a non-judicial punishment proceeding. These proceedings, while very serious and while have very serious ramifications, are in, are in, an individual like, like, like Petty Officer Sassen in this case doesn't have a sort of impartial adjudicator, doesn't have rules of evidence that he's able to avail himself of, and doesn't have counsel at the captain's mast. And, and so, you know, number one, there's no authority we've been able to identify imposing the voluntariness standard at the non-judicial punishment. But, you know, secondarily, you know, we'd submit that his statements were not voluntary. He was in a very precarious position as a frocked chief. That means that he was sort of provisionally promoted was, but, but that was something that could be taken away from him at any moment. I think we understand from your brief your arguments on voluntariness, but Judge Levy asked you a question, which is, what is the source of, of power or authority for this court to apply the exclusionary rule, which the Supreme Court has told us over and over is disfavored even in criminal proceedings, to apply the exclusionary rule to the violation that you claim occurred here? Well, Your Honor, we think the Administrative Procedure Act permits this, authorizes this court to exclude the statements that Petty Officer Sassen gave at mast, because these were stated without, sort of without adherence to the regulations that the Navy had put into place. And, and there's really, there's no remedy for Petty Officer Sassen for the violation of that regulation. Judge Levy just told you what the remedy is. The remedy is that they, that they become part of the mix of circumstances which are considered by the Navy in determining what weight to give to his statements. And the Navy's decision is then reviewed by us to determine whether or not that's a valid remedy. I mean, that's a, that may not be the remedy you want, but that's a perfectly valid remedy. Well, Your Honor, and, and I'm not sure if this, I'm not sure if this answers your question, but the, the statements, absent the statements, um, excuse me. You may finish your answer. Thank you. Absent the statements that Petty Officer Sassen gave, there's, there's no evidence in the record that's otherwise probative of either of the charges, um, that he faced. So to, uh, I'll rest there. Thank you. All right. Thank you. Good morning, Your Honors. May it please the Court, AUSA Annapurnabala Krishna for the Navy. You're going to have to speak up more. Of course, Your Honor. When faced with charges of violating the Code of Military Justice, Mr. Sassen chose nonjudicial punishment over a court-martial. And by doing that, he gave up something, but he also gained something. He would have faced a greater punishment had he been convicted of his offenses at a court-martial. But by choosing nonjudicial punishment, he guaranteed that he would never have to face a conviction in his record for what he did. I'm sorry. Where is this argument going? You've heard the questions from the Court. Could you, uh, please direct your argument more to those issues? What is the, uh, source of the obligation, and is your opponent right that, uh, the only remedy that would make any sense here is the exclusionary rule? The remedy, Your Honor, for the error that plaintiff alleges, sorry, the appellant alleges, would be suppression of evidence during a court-martial. You say the error that the appellant alleges? Yes. Is there any question that under the Navy's own regulations and its guidance, that he was entitled to a cleansing warning before he began, uh, testifying at the Captain's Mass? I'm going to take that question in parts. Number one, he absolutely was entitled to a warning at the review board. That is correct. Number two, according to the Navy's own rules, which are at the record at 110 to 112 and cited in his brief, he was entitled to a cleansing warning if there was a reason to suspect that the Article 31B warning hadn't been given to him earlier. The record does not show that Lieutenant Geiser had a reason to suspect that the warning wasn't given. The Navy has assumed for purposes of argument all throughout the proceedings below and today that the warning wasn't given, but there was nothing in the record to show that the Article 31B warning wasn't given during the review board proceedings. Why is it the Navy's position, I was actually confused by that when I read the briefs, um, I think you indicated that, um, uh, there's a script that's used, a disciplinary review board would have used a script which would have included the 31B warning. Why is the We're assuming for the sake of this case that it wasn't given because Mr. Sasson said it wasn't given and nobody, and at the time of the captain's mask, he hadn't told anyone that it hadn't been given, so evidence wasn't developed on that issue. Nobody brought Lieutenant Geiser in at that time to ask. Wouldn't it have been the two individuals that performed the initial disciplinary review that would know whether they gave the warning at that point? Yes, Your Honor, but they were not asked because at the time Mr. Sasson had given a voluntary statement and he had also not brought up the lack of the initial warning to the Navy. So you seem to be putting this backwards. I, uh, thank you for clarifying, but I find the Navy's position here to be quite troubling. You only give a cleansing warning if the Navy officer in charge had reason to think that an on-and-on statement was given. That's the Navy's position? That's what the rule says, Your Honor. Where in the rule does it say that? It's quoted by the appellant at the record, 110 to 112. Let me open that. It's at the top of 111 of the record, prior admissions cleansing warnings. Occasionally a situation will occur where a suspect has made incriminating statements to a command representative or to other police personnel without a proper Article 31 warning beforehand. When it is suspected that an existing criminal admission was improperly obtained, the suspect must be advised, given a cleansing warning. When it is suspected? When it is suspected, Your Honor. I'm going to move this along. Let's assume that he was entitled to a cleansing warning. Yes. Then we get to the question of what the remedy should have been. Yes, Your Honor. The remedy would have been had he elected to go to a court martial. No, no, no. Can you deal with the facts of this case? This is not a court martial. What is the remedy for the failure to give a cleansing warning, assuming he was entitled to a cleansing warning, and that he made the written statement? Unfortunately, Your Honor, the only answer I can give you is that the remedy, according to the statute, would be that such evidence would not be able to be used against him in a court martial unless the government was able to prove, by a preponderance of the evidence, that the totality of the circumstances were such that there was no coercion in obtaining the original statement. Well, the absence of warnings in this non-judicial discipline process certainly goes to the question of coercion, right? Yes, Your Honor. It needs to be considered. And my question to you is whether, did the Board do enough in its decision to show that it actually gave that real consideration? There's really barely any mention of it. The Board's decision refers to the earlier process. It kind of provides sort of an accounting of what's occurred. And there's, as I recall, actually no analysis of what weight, if any, these procedural errors should be given in deciding whether or not the statements were voluntary. In view of that, if I have it right, is this a case in which we should send it back to the Board to say, articulate your reasons? Yes, Your Honor. The remedy would be a remand to the Board for them to articulate its reasons in light of the Court's decision if the Court decides that they did not do so initially. I thought he had the burden of showing under the Administrative Procedure Act that the error was prejudicial to him. Yes, Your Honor. I thought the government's position was that he had not met that burden. That doesn't appear to be what you're arguing at the moment. There are two arguments, Your Honor. The first is that there was no error in considering the voluntary statement. And the second is that if there was an error by not giving the original Article 31B warning or a cleansing warning, that error would not be prejudicial because this wasn't a court-martial. There's no authority that either side has identified that would allow us No, of course. We have to decide this question. It's not helpful to us to say there's no authority. Well, I would look to the So what does the government want us to do if we were to assume that he was entitled to a cleansing warning and he was not given it? The government would say that his remedy, he didn't have a remedy for that particular situation because he chose a non-judicial punishment. The statute says that where that statement is solicited in violation of Article 31B, that evidence can't be used against the individual in a court-martial. So you're essentially saying that he effectively waived any claim of error by his decision not to have a court-martial? Yes, Your Honor. According to the record, the relief he's asking this court for, he gave up on January 15th, two days after the review board, when he elected to have, face less risk, but also receive less protection. And is there, you know, as a member of the Navy, is there any reason for us to assume that he would know this, that this is the consequence of this decision, that he's waiving all these rights? Well, the board, Your Honor, noted that he had been in the Navy for seven years and that he was on the road to becoming a chief. They ascribed to him a certain amount of knowledge. He was advised on January 13th at 9.57 a.m. in the morning that he had a right to counsel that the Navy would pay for. He waived that right. He was advised again on January 15th that he could elect not to have non-judicial punishment. He also waived that right there. The Navy's position is that the relief he's asking the court for, he could have gotten, but he waived the right for that on January 15th. But what you call a waiver occurred at a time when the man had not received the cleansing warning that he was entitled to. And his timely receipt of that cleansing warning, arguably, could have changed his decisional calculus as to which direction to go in. Perhaps, Your Honor, but the cleansing warning would have just said any evidence that was obtained without the warning cannot be used against him in a court-martial. That may have influenced what he put in his ensuing statement. Or he may have declined at that point to give an ensuing statement. Your Honor, our position is that he would still have had that right two days later, on January 15th. If there are no further questions, the Navy asks this court to affirm the decision of the Board of Correction. Okay. Thank you. Thank you, Your Honor. I rise to make two brief points. The first, Judge Salia, to the question you left off asking me. In the Navia Duran case, First Circuit case, there was no discussion, in a very similar situation to this in the immigration context, where an INS regulation provided that an individual needed to be warned that the statement he or she made could be used against her in a subsequent proceeding. Where that warning wasn't given, that statement was ultimately excluded. But there was no discussion in that case of an explicit corresponding exclusionary rule. The court's remedy for that violation was to exclude the statement. Turning to my second point, the remedy, if the court were to find in favor of Petty Officer Sasson, a remand to the Board would likely not be sufficient, given that there's no evidence outside of Petty Officer Sasson's statement to sustain either of those charges. Let me ask you about that. Ms. April gave a statement, correct? I'm sorry? Ms. April gave a statement. That's correct, Your Honor. And she explained, essentially, that they had come to the story as to what happened to her. Why isn't her statement alone sufficient to justify both violations in this case? Well, Your Honor, the charges that Petty Officer Sasson faced in this case, one was making a false statement to Lieutenant Geiser, and the second was the charge of failing to truthfully report to the chain of command the incident that had occurred on the night of January 11th. Her statement's not appropriate of either of those charges. Of course it is. The commanding officer here knew that your client had not made a report of the injury. Her statement establishes that she was injured. The commanding officer to whom the report should have been made knew that no report had been made at the time. Your Honor, may I briefly respond? Yes. Thank you. There's no evidence among what was considered by the captain at Captain's Mass that reflect that no statement was given. There's no statement from Lieutenant Geiser. There's no statement, written or otherwise, from the captain himself. All that's in the Notification of Rights form, which proceeds from that. Because he doesn't spell it out in the decision, we are to ignore that fact? Well, Your Honor, even though nonjudicial punishment proceeding is an informal proceeding, it's a serious proceeding, and there are procedures that are laid out in the Manual for Courts Martial that need to be followed. And the information relied upon to make the nonjudicial punishment determination needs to be specified in that form. And the format, I'm sorry, I don't have the site. I think it's JA-63, but I can get you the site. That particular Election of Rights form lists only three pieces of information that was considered at Mass. There was Petty Officer Sasson's statement, Airman Abril's statement, and Mr. Fairchild's statement. There's nothing in any of those statements that would support an allegation that no statement, that nothing was said. Except perhaps common sense that the commander knew that he didn't get a report, right? Besides, there's a whole line of cases from the Supreme Court in various contexts saying that where a vital piece of evidence is excluded on appeal and there is available other evidence to replace it, you should remand rather than enter judgment to give the trier an opportunity to consider the evidence that wasn't necessary to be introduced before. I don't see why that body of law wouldn't apply here. Well, Your Honor, Petty Officer Sasson would no longer be subject to Mass now that he's no longer a member of the Navy. He's still subject to the correction of his records. I'm sorry? He's still subject to the correction of his records. Yeah, that's correct.  Thank you. Thank you, Your Honor.